**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**CONSTANCE HICKS**,

Plaintiff,

v.

**SHIFTKEY, LLC,**

Defendant.

CIVIL ACTION NO.: 3:25-CV-01951-SVN

JUNE 26, 2026

# MOTION TO COMPEL ARBITRATION

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 *et seq.*, ("FAA") Defendants ShiftKey, LLC ("ShiftKey") and Lauren Dobson ("Ms. Dobson") hereby move to stay this matter and compel arbitration. This Motion is necessary as Plaintiff Constance Hicks ("Plaintiff") has filed this action in violation of her agreement to arbitrate all claims arising from her relationship with ShiftKey. Plaintiff signed the most recent Terms of Service, which includes an Arbitration Agreement, on September 7, 2023. The Arbitration Agreement is governed by the FAA and covers all the claims Plaintiff asserts here. ShiftKey respectfully asks the Court to enforce the Arbitration Agreement as to Plaintiff by compelling arbitration.

## I. BACKGROUND

### a. Plaintiff Executed an Arbitration Agreement with ShiftKey

ShiftKey provides a technology platform for healthcare professionals to connect with facilities seeking healthcare professionals to perform healthcare services during shifts. Declaration of Aurora Kaiser ("Kaiser Dec." ¶ 4.) attached as **Exhibit 1**. ShiftKey does not employ the healthcare professionals who use the service; rather, ShiftKey helps to facilitate connections to

allow the healthcare professionals to connect with healthcare facilities in need of their services. (Kaiser Dec. ¶ 5, Ex. A.)

Plaintiff created an account to use the ShiftKey platform on December 30, 2022, and signed the Terms of Service in effect at that time to access ShiftKey's platform on this same date. ( Kaiser Dec.¶ 6, Ex. A.) Throughout Plaintiff's engagement on the platform, she has periodically been presented with updated Terms of Service for review and signature. (*Id.*) Most recently, Plaintiff signed the Terms of Service on September 7, 2023, which contains an Arbitration Agreement. (Kaiser Dec. ¶ 7, Ex. B.)

The Arbitration Agreement ("Agreement"), which is governed by the FAA, requires both ShiftKey and Plaintiff to arbitrate any disputes between them relating to Plaintiff's access to and use of the platform. The Agreement is presented in bolded font for emphasis and states in relevant part:

> 16.1 YOU AND SHIFTKEY RESPECTIVELY AGREE TO WAIVE THE RIGHT TO SEEK REMEDIES IN COURT, INCLUDING ANY RIGHT TO A JURY TRIAL. YOU AND SHIFTKEY AGREE THAT ANY DISPUTE BETWEEN OR AMONG THEM OR THEIR SUBSIDIARIES, AFFILIATES OR RELATED ENTITIES ARISING OUT OF, RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, WILL BE RESOLVED IN ACCORDANCE WITH A TWO-STEP DISPUTE RESOLUTION PROCEDURE INVOLVING: (1) STEP ONE: NON-BINDING MEDIATION, AND (2) STEP TWO: BINDING ARBITRATION UNDER THE FEDERAL ARBITRATION ACT, 9 U.S.C. SECTION 1 ET. SEQ., OR STATE LAW, WHICHEVER IS APPLICABLE.
>
> * * *
>
> 16.2. TO THE FULLEST EXTENT PERMITTED BY LAW, THE AGREEMENT TO ARBITRATE SET FORTH IN THIS SECTION COVERS ALL GRIEVANCES, DISPUTES, CLAIMS OR CAUSES OF ACTION THAT OTHERWISE COULD BE BROUGHT IN A FEDERAL, STATE OR LOCAL COURT OR AGENCY UNDER APPLICABLE FEDERAL, STATE, OR LOCAL LAWS, ARISING OUT OF OR RELATING TO YOUR BUSINESS RELATIONSHIP WITH SHIFTKEY (OR THE SEPARATION THEREOF), INCLUDING ANY CLAIMS YOU MAY HAVE AGAINST THE SHIFTKEY

> OR AGAINST ITS OFFICERS, DIRECTORS, SUPERVISORS, MANAGERS, EMPLOYEES, OR AGENTS IN THEIR CAPACITY AS SUCH OR OTHERWISE. THE CLAIMS COVERED BY THE AGREEMENT TO ARBITRATE IN THIS SECTION 17 INCLUDE CLAIMS FOR BREACH OF ANY CONTRACT OR COVENANT (EXPRESS OR IMPLIED), TORT CLAIMS, CLAIMS FOR COMPENSATION DUE, AND CLAIMS FOR VIOLATION OF ANY FEDERAL, STATE, LOCAL OR OTHER GOVERNMENTAL LAW, STATUTE, REGULATION, OR ORDINANCE.
>
> * * *
>
> 16.4. BY CONSENTING TO THIS AGREEMENT, YOU EXPRESSLY REPRESENT THAT: (I) YOU HAVE BEEN GIVEN THE OPPORTUNITY TO FULLY REVIEW AND COMPREHEND THIS AGREEMENT; (II) YOU UNDERSTAND THE TERMS OF THIS AGREEMENT AND FREELY AND VOLUNTARILY CONSENT TO BE BOUND TO THIS AGREEMENT; AND (III) YOU FULLY UNDERSTAND AND AGREE THAT THE YOU ARE GIVING UP CERTAIN RIGHTS OTHERWISE AFFORDED TO YOU BY CIVIL COURT ACTIONS, INCLUDING THE RIGHT TO A JURY TRIAL.

(Kaiser Dec. ¶ 7, Ex. B.)

The Terms of Service further requires Plaintiff's express acknowledgement that she has "read and understand this agreement and agree that [her] use of the platform and/or services is an acknowledgement of [her] agreement to be bound by all of the terms and conditions of this agreement. (Kaiser Dec. ¶ 7, Ex. B.)

**b. Plaintiff's Claims Are Subject to the Arbitration Agreement**

Plaintiff commenced the present legal action on November 18, 2025 and asserted a wide range of claims against twelve different defendants, including ShiftKey. As her Complaint was accompanied by a Motion for Leave to Proceed in forma pauperis, the matter was referred to a Magistrate Judge to conduct an initial review of the Complaint. Before that review could occur, Plaintiff filed an Amended Complaint to replace her original Complaint.

On January 5, 2026, Hon. Robert M. Spector, U.S.M.J entered a Recommended Ruling dismissing the claims against the EEOC and CHRO defendants without leave to amend due to the

fact that these specific defendants were deemed immune from suit. (Dkt. No. 19). The Court further recommended that the following claims be dismissed with prejudice: Plaintiff's claims that ShiftKey improperly withheld her tax documents; Plaintiff's claims that ShiftKey exposed her to an unsafe work environment; Plaintiff's claims that ShiftKey violated federal law by retaliating against her; and Plaintiff's claims regarding alleged fraudulent statements made to the CHRO. The remaining claims were then dismissed without prejudice save for Plaintiff's state and federal law claims regarding ShiftKey's alleged withholding of her wages.

Thereafter, Plaintiff filed a Second Amended Complaint that rendered the initial Recommended Ruling moot. (Dkt. No. 21). This second Amended Complaint was also referred to Magistrate Spector for review and resulted in a second Recommended Ruling entered on February 12, 2026. (Dkt. No. 23) Therein, Magistrate Spector concluded that Plaintiff had not addressed the deficiencies raised in the original Recommended Ruling and therefore explicitly adopted the same reasoning and conclusion articulated previously. (Dkt No. 25). The Court adopted this Recommended Ruling on March 26, 2026. (Dkt. No. 28).

A Third Amended Complaint was thereafter filed on March 29, 2026. Therein, Plaintiff confirmed that she was asserting a new claim against Lauren Dobson, who Plaintiff identifies in the Complaint as the Head of Human Resources for ShiftKey. No additional allegations were included relating to Ms. Dobson beyond identifying her as a new individually named defendant. Upon information and belief, ShiftKey and Ms. Dobson are the only two defendants remaining in this action.. While the Third Amended Complaint does not articulate which specific causes of action are asserted against each of the two remaining Defendants, all of the claims asserted arise from Plaintiff's use of the ShiftKey Platform.

On June 9, 2026, Plaintiff confirmed that she would not agree to voluntarily proceed to arbitration despite the existence of a valid Arbitration Agreement covering the claims asserted. She further appears to continue to believe that claims the Court had dismissed with prejudice remain actionable, despite this Court's adoption of the Second Recommended Ruling. *See* Email Correspondence attached as **Exhibit 2.**

## II. <u>LEGAL ARGUMENT</u>

### a. Federal Law and Policy Strongly Favor Enforcement of Arbitration Agreements

The United States Supreme Court has repeatedly held that the FAA establishes a strong policy favoring arbitration when the parties have entered into a valid agreement to arbitrate their claims and disputes. *See, e.g., AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 338 (2011); *see also, Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). This "strong federal policy" applies with full force to agreements that require employees (and former employees) to arbitrate employment disputes, such as the discrimination and retaliation claims raised in this case. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-29 (1991) (holding that individual employee who signed arbitration agreement can be compelled to arbitrate ADEA claim); *Ferguson v. United Healthcare*, No. 3:08cv1389-RMK, 2008 WL 5246145 (D. Conn. Dec. 17, 2008) (granting employer's motion to compel arbitration of former employee's discrimination claims where an employee received a copy of arbitration agreement in employment handbook and executed an acknowledgment confirming she had received and reviewed the arbitration agreement); *Filloramo v. New Alliance Invs., Inc.*, No. 3:06cv01825-AVC, 2007 WL 1206736 at *4 (D. Conn. Apr. 23, 2007) (dismissing case and granting motion to compel arbitration of ADA claim); *Kouromihelakis v. Hartford Fire Ins. Co.*, 48 F. Supp. 3d 175, 183 (D. Conn. 2014) (holding an employee's CFEPA claims fell within the scope of the arbitration agreement and

granting a motion to stay pending outcome of arbitration); *Woods v. Complete Lab. & Staffing, LLC*, Superior Court, JD of Hartford, 2018 WL 6015763, at *2 (Oct. 31, 2018,. Shapiro, J.T.R.)(denying plaintiff's motion to reargue court's granting of motion to compel arbitration of claims pursuant to Con. Gen. Stat. § 31-290a).

Section 2 of the FAA governs the applicability of the present Agreement to the dispute at issue. Under Section 2 if the parties have entered into a valid arbitration agreement that covers the dispute at issue, then the agreement should be enforced, and the parties should be required to arbitrate their claims. Indeed, Section 2 states in pertinent part as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Similarly, the FAA's enforcement sections require a court to stay or dismiss a proceeding where the issue in the proceeding "is referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Section 3 of the FAA is a mandatory provision that "leaves no place for . . . discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) (internal quotation marks omitted); *accord Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003); *Topf v. Warnaco, Inc.*, 942 F. Supp. 762 (D. Conn. 1996). Thus, courts must "rigorously enforce agreements to arbitrate" as embodied in the FAA and the strong federal policy favoring arbitration." *See*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) (internal quotation marks and citation omitted).

Section 4 of the FAA governs motions to compel arbitration and provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceeds in the manner provided for in such agreement." 9 U.S.C. § 4. Importantly, the FAA should be applied in both state and federal court. *See Hottle v. BDO Seidman LLP*, 268 Conn. 694, A.2d 862 (2004) (holding that "the party seeking arbitration may petition federal or state court for [an] order compelling arbitration pursuant to [the] Federal Arbitration Act. 9 U.S.C.A. § 4"); *A Better Way Wholesale Autos, Inc. v. James Saint Paul*, Superior Court, JD of Waterbury, 2016 WL 8135391, at *2 (Dec. 30, 2016 Taylor, J.).

Connecticut also strongly favors enforcement of arbitration agreements. *See State v. AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn 467, 473 (2000) (holding that "arbitration is the favored means of settling differences..."). Connecticut courts have long favored arbitration because "it is intended to avoid the formalities, delay, expense, and vexation of ordinary litigation." *Hessler v. Smith Barney, Inc.*, Superior Court, 1999 WL 703077, at *1 (Aug. 20, 1999, Sullivan, J.) (upholding an agreement to arbitrate all employment-related disputes) (internal citation omitted). Arbitration agreements illustrate the strong public policy favoring freedom of contract and the efficient resolution of disputes. Id. Moreover, when a contract contains a broad arbitration clause that purports to refer all disputes arising out of a contract to arbitrate, a strong presumption of arbitrability applies. *See Carey v. Connecticut General Life Insurance Company*, 93 F.Supp. 2d 165, 168 (D.Conn. 1999). The Connecticut appellate courts have repeatedly affirmed the favoring

of arbitration as a means of settling private disputes. *Green v. Connecticut Disposal Services, Inc.*, 62 Conn. App. 83 (2001); *White v. Kampner*, 229 Conn. 465, 471 (1994).

Similar to the FAA, Connecticut General Statutes § 52-407gg obligates the Court to stay the present action and compel arbitration because there is an agreement to arbitrate. Section 52-407gg provides that a party to an agreement to arbitrate may move to compel arbitration if the other party refuses. Conn. Gen. Stat. § 52-407gg(a). Upon the motion, the Court shall stay any judicial proceeding that involves a claim subject to arbitration. Conn. Gen. Stat. § 52-407gg(f). If the party that refuses to arbitrate does not oppose the motion to compel, the Court is obligated to order the parties to arbitrate. Conn. Gen. Stat. § 52-407gg(a)(1). Should the refusing party oppose the motion, the Court shall order the parties to arbitrate, unless it finds there is no enforceable agreement to arbitrate. (Conn. Gen. Stat. § 52-407gg(a)(2); *see also* § 52-407ff ("An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable, except upon a ground that exists at law or in equity for the revocation of a contract…").

Connecticut public policy favoring arbitration includes arbitration of employment-related disputes. *See, e.g., Capone v. Elec. Boat Corp.*, Superior Court, JD of New London, 2008 WL 2345880 at *3 (May 19, 2008 Peck, J.) (In granting motion to compel arbitration of employee's claim for violation of Conn. Gen. Stat. § 31-51q, the court noted, "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (emphasis in the original; internal quotation marks omitted); *see also Peters v. Pillsbury Winthrop Shaw Pitman, LLP*, Superior Court, JD of Stamford, 2011 WL 5304627 at *4 (Sept. 29, 2011 Adams, JTR) (observing that "[t]he United States Supreme Court has stated repeatedly and

unequivocally that the FAA establishes a federal policy in favor of arbitration . . . Connecticut cases have followed suit").

**b. Plaintiff Entered Into a Valid and Enforceable Arbitration Agreement Compelling Arbitration**

"While [the] Federal Arbitration Act…creates [a] body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of [the] Act, in evaluating whether parties have entered into a valid arbitration agreement, [the] court must look to state law principles." *See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360 (2d Cir. 2003); *Hottle*, 268 Conn. at 846.

"Prior to compelling arbitration, [the] trial court must first determine two threshold issues that are governed by state law, rather than federal law: (1) whether parties entered into contractually valid arbitration agreement, and (2) if so, whether parties' dispute fall within [the] scope of [the] arbitration agreement." *See Cap Gemini Ernst & Young, U.S., L.L.C.*, 346 F.3d at 306; *Hottle*, 268 Conn. at 846. Under Connecticut law, a valid arbitration agreement requires a voluntary offer, voluntary acceptance, and support by mutual consideration. *See Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 104 (Conn. 2003); *Greary v. Wentworth Labs, Inc.*, 60 Conn. App. 626-28 (Conn. App. Ct. 2000). Additionally, a valid arbitration agreement must be expressed in writing but there is no "particular form of words required to form [the] agreement to arbitrate." *See* C.G.S. § 52- 408*; see also Stack v. Hartford Distributors, Inc.*, 179 Conn. App. 22 (2017) ("pursuant to Connecticut's statutory arbitration scheme, that agreement must be expressed in a writing."); *Tirreno v. The Hartford,* 161 Conn. App. 678 (2015).

In this case, the agreement is valid and enforceable. *See* Conn. Gen. Stat. § 52-408. As attested to by Aurora Kaiser in the declaration attached hereto as **Exhibit 1**, ShiftKey is a technology company that provides a technology platform where healthcare facilities and self-

employed or independent contractor healthcare service providers ("Independent Providers") can connect with each other to develop business arrangements to meet the healthcare needs of the facilities. (Kaiser Dec. ¶ 4.) ShiftKey is not involved with the relationship that develops; rather, it provides the platform that allows such parties to connect and contract with each other. (Kaiser Dec. ¶ 5.) In exchange for its services facilitating these business relationships, ShiftKey collects a service fee from the Independent Providers on a per shift basis. (Ex. A. to Decl. of Aurora Kaiser, Section 5.2)

When an Independent Provider signs up to access the ShiftKey platform, they are provided with a copy of the ShiftKey Terms of Service. This document outlines the terms and conditions for access and use of the platform. In order to gain access to the platform, the Independent Provider must digitally accept the Terms of Service. (Kaiser Dec. ¶ 8). Independent Providers are periodically provided updated copies of the Terms of Service and must review and accept the most current terms in order to maintain their ability to access and use the platform. (Kaiser Dec. ¶ 9).

At the time an Independent Provider agrees to the Terms and Conditions, an electronic record is generated showing that they agreed to the Terms and Conditions before being allowed access to the platform. (Kaiser Dec. ¶ 6). For Plaintiff specifically, ShiftKey records reflect that she was presented with, and agreed to, the Terms of Service on three separate occasions, including on December 30, 2022 when her original account for the platform was created as well as against on July 1, 2023 and September 7, 2023. (Kaiser Dec. ¶ 6). All three of these documents contain an Arbitration Agreement. As such, there was a voluntary offer for Plaintiff to enter into a relationship with ShiftKey, Plaintiff voluntarily accepted the offer by signing the Terms and Conditions, and by extension the arbitration provision, and there was mutual consideration

between the Parties. See Therefore, Plaintiff entered into a valid and enforceable arbitration agreement.

**c. The Instant Dispute Falls Within the Scope of the Arbitration Agreement**

Under Connecticut law, the scope of an arbitration agreement is determined by its express provision. *See White v. Kampner*, 229 Conn. 465, at 472 (1994). Accordingly, a dispute is within the scope of the arbitration agreement when the terms of the agreement expressly refer to said dispute. *See Bd. Of Educ. Of the Town of New Milford v. New Milford Educ. Ass'n*, 331 Conn. 524, 541-42, 205 A.3d 552, 564 (2019).

The Arbitration Agreement signed by the Plaintiff applies broadly to "[a]ll grievances, disputes, claims or causes of action that otherwise could be brought in a federal, state or local court or agency under applicable federal, state or local laws, arising out of or relating to your business relationship with ShiftKey (or the separation thereof)" (Kaiser Dec. ¶ 7, Ex. B, Section 16.2). The provision expressly includes the following:

> [A]ny claims you may have against ShiftKey or against its officers, directors, supervisors, managers, employees, or agents in their capacity as such or otherwise. The claims covered by the Agreement in this Section include claims for breach of any contract or covenant (express or implied), tort claims, claims for compensation due, and claims for violation of any federal, state, local or other governmental law, statute, regulation or ordinance.

(*Id*).

Here, the claims that have survived the Court's initial review of the previously filed Complaints include Plaintiff's claim for ShiftKey's alleged failure to give her wages earned while utilizing the platform as well as alleged retaliation for reporting the conditions of a healthcare facility that she performed work for through the ShiftKey platform. While Lauren Dobson has been named as an individual defendant in the current operative Complaint, it is unclear what specific claim is asserted against her specifically other than the allegation that she has been named

due to her alleged position as ShiftKey's Head of Human Resources. As a result, Plaintiff's claims clearly arise out of her contractual relationship with ShiftKey and include claims asserted against the Company as well as a ShiftKey employee. These claims fall squarely within the scope of the Agreement.

**d. The Court Should Stay this Proceeding Pending Arbitration**

Federal law permits an action to be stayed pending the completion of arbitration. According to the Federal Arbitration Act, "the court…upon being satisfied that the issue…is referable to arbitration…shall on application of one of the parties stay the trial of the action until such arbitration has been had." *See* 9 U.S.C. § 3, *see also Clinton v. Oppenheimer & Co.*, 824 F.Supp.2d 476, 486-87 (S.D.N.Y. 2011) (granting a motion to stay and compel arbitration); *McIntosh v. Morgan & Stanley*, No. 3:10-CV-886, 2010 WL 4810603, at *3 (N.D.N.Y. Nov. 19, 2010) (granting a motion to stay and compel arbitration).

The Court should stay the proceeding of this action pending the completion of arbitration. As established, both Plaintiff and ShiftKey are parties to the Agreement and the scope of the Agreement includes claims against ShiftKey as well as a ShiftKey employee relating to Plaintiff's use of the platform. Moreover, both ShiftKey and Ms. Dobson are ready and willing to proceed with the arbitration. Therefore, the Court should stay the proceedings in compliance with the FAA.

## III. CONCLUSION

Wherefore, for any and all of the foregoing reasons, Defendants respectfully request the Court grant this Motion and enter an order compelling Plaintiff to submit all claims against Defendants to binding arbitration and to stay all proceedings in this Court pending the disposition of Plaintiff's claims in arbitration.

Respectfully submitted,

*/s/ Elizabeth R. Mckenna*

Elizabeth R. McKenna (ct28113)
Ian Beck (ct445835)
LITTLER MENDELSON, PC
One Century Tower
265 Church Street - Suite 300
New Haven, CT 06510
Telephone: 203.974.8714
Facsimile: 203.823.4801
emckenna@littler.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26thh day of June, 2026, a copy of the foregoing was sent via first class mail to pro se parties of record as follows:

Constance Hicks
1499 Silas Deane Highway #224
Rocky Hill, CT 06067

*/s/ Elizabeth R. Mckenna*
Elizabeth R. McKenna